DERAISMES and others *vs.* THE MERCHANTS' MUTUAL INSURANCE COMPANY.

Where the charter of a mutual insurance company authorized such company, "for the better security of its dealers," to receive premium notes in advance, of persons intending to take policies, and to negotiate such notes for the purpose of paying claims or otherwise, in the course of its business, and to pay to the makers of such notes a compensation not exceeding five per cent. per annum, on so much of the notes as exceeded the premiums on policies actually taken; *held*, that a note taken by the company in pursuance of its charter for premiums in advance, was valid and effectual for the whole face thereof, although the premiums on insurances actually received by the maker, amounted to only a part of such note.

It seems, that a note so given, is valid by force of the statute authorizing it to be taken, and therefore that a partial failure of consideration cannot be set up to defeat a recovery of the full amount.

But if a consideration is necessary, the concurrence of others in giving similar notes for the purpose of giving a credit to the company in pursuance of an agreement entered into by all the makers, the contemplated advantages of insurance in such company, and the compensation authorized to be paid to the makers on such an amount as the notes should exceed the premiums on insurances actually taken, constitute a sufficient consideration to uphold such a note.

THE Merchants' Mutual Insurance Company brought assumpsit in the superior court of the city of New-York, against Deraismes & Boizard, upon a promissory note made by them, as follows:

"$2785,05. New-York, December 4, 1844.

Twelve months after date we promise to pay the Merchants' Mutual Insurance Company, or order, for value received, twenty-seven hundred and eighty-five dollars and five cents.

DERAISMES & BOIZARD."

This note was given in renewal of a previous note for $3000,

which was given for *premiums in advance on policies of in-surance,* intended to be received by the defendants from the plaintiffs, under the twelfth section of the act incorporating the plaintiffs, (*Stat.* 1843, *p.* 73,) and in pursuance of the following agreement, which was signed by the defendants and others: "The subscribers hereby agree to give their notes at one year from date, to The Merchants' Mutual Insurance Company, of which William Neilson is intended to be the President, for the amounts set opposite to their names respectively, being for premiums on risks to be taken by said company on the following conditions: First. The amount of said risks shall be respectively at least the sums affixed to our signatures, the rates of premiums to be agreed upon hereafter. Secondly. That this agreement shall be entered into by persons satisfactory to each of us, and to the collective amount of two hundred thousand dollars. Thirdly. That the rates charged by The Merchants' Mutual Insurance Company shall be the same as are charged by the insurance companies of this city. Fourthly. That the subscribers shall enjoy the advantage of The Merchants' Mutual Insurance Company, as secured by charter, and shall in no event be made liable for the debts of the company, beyond the amount of their several subscriptions." The defendants actually took policies of insurance in the company, in pursuance of the above agreement, and of the twelfth section of the charter, to such an amount only as that the premiums thereon amounted to the sum of $790, and no more. This sum, before the trial of the cause, had been paid to and accepted by the plaintiffs' attorney, together with the costs up to the time of such payment; and it was insisted that the note was not valid or collectable for any further sum, being, as was contended, for all beyond that sum, an engagement to pay premiums on risks which the company never assumed. The company became insolvent in consequence of losses sustained by the great fire in 1845.

The judge who tried the cause in the superior court, charged the jury, that as matter of law upon the whole case, the plaintiffs were entitled to recover the full amount of the note, less

the sum of $790 paid. A verdict and judgment were had ac-
cordingly, and the defendants having duly excepted, bring error
into this court.

*C. O'Conor*, for the plaintiffs in error. The note in ques-
tion was given in advance for premiums on risks to be assumed
by the company for the defendants; and so far as risks were
not assumed the plaintiffs were not entitled to recover. The
notes, authorized to be taken for premiums in advance from
persons intending to receive policies under the 12th section of
the act of incorporation, are not absolutely and unconditionally
payable, whether the company earn premiums or not. That
section is merely an enabling clause and not a clause providing
a *capital* for the company. Its object was to provide the com-
pany with accommodation notes, which if needed, might be
used to pay ordinary expenses and losses occurring in the regu-
lar course of its business. The other provisions of the charter
harmonized with this construction, (§§ 11, 13, 15 16 17, 24,)
while the construction contended for on the other side would
lead to the greatest absurdities and incongruities. The nature
and history of mutual insurance companies, and a comparative
view of the characters they have borne at different times, also
support the construction which we contend for. (*Strang* v.
*Harvey*, 3 *Bing*. 304; *id*. 315; 2 *Term Rep*. 512; 7 *id*. 339;
*Laws of* 1809, *p*. 154; *id*. 1802, *p*. 152; *id*. 1814, *p*. 56; *id*.
1816, *p*. 111; *id*. 1834, *p*. 530, §§ 4, 7, 8; *id*. 1836, *p*. 128,
§§ 6, 8, 11.)

*D. Lord*, for the defendants in error. The defendants gave
the note in question for the purpose of aiding in the establish-
ment and support of a company for mutual insurance, without
any stock capital. The advantages from such company to
every person intending to take out policies, were a consideration
sufficient to uphold a note given for the above purpose. The
uniting or concurring with others who were to give similar
notes, and the giving of such notes by others, was a considera-
tion sufficient to uphold the note. It was also a sufficient con-

sideration to sustain this note, that the company organized and commenced business upon the basis of this and other similar notes, and issued policies to the makers. The taking of policies by dealers with the company, having the 12th section of this charter in its constitution, was a credit given to the company upon all the assets in its possession, and was also a good consideration. The note was valid as a statutory security; the statute itself removed the objection of the want of consideration, and it sanctioned a compensation for the liability.

The notes are valid as a security to dealers for their full amount; otherwise they would not be a security to dealers. As mere advances of premiums, not to be valid unless the policies were taken out, the notes were in nowise a security for dealers. As notes to be valid only when negotiated before insolvency, they would afford no security to dealers, but would create as large a claim on the company as that which their negotiation satisfied. They were intended to induce insurances with the company not only from strangers, but from the givers of the notes; to induce the makers to fill them up by premiums. If the makers are not held liable for the full amount, this object would be defeated.

GRAY, J. This is an action to recover from the plaintiff in error a note for $2785,05, executed to the Merchants' Mutual Insurance Company, in renewal of a note for $8000, given by them to said company, pursuant to the provisions of the twelfth section of the act of incorporation of said company, passed April 10, 1843. (*See Sess. Laws of* 1843, *ch.* 95, *p.* 73.) The second section of the act provides that after having received approved applications for insurance to the amount of $500,000, the premiums on which shall have been actually paid in or secured to be paid, the company may be organized and commence its operations. No objection having been made on that ground, we are authorized to infer that all the requirements of the act, preliminary to the due organization of the company, were observed and fully complied with. The 12th section of the act provides that "the company, for the

Deraismes *v.* The Merchants' Mutual Ins. Co.

better security of its dealers, may receive notes for premiums in advance, of persons intending to receive its policies, and may negotiate such notes for the purpose of paying claims or otherwise in the course of its business," and authorizes a compensation not exceeding five per cent. per annum to be made to the signers of such notes on such portion thereof as may exceed the amount of premiums actually paid in by the several makers respectively.

The note in question was given for premiums in advance under the 12th section. The premiums on insurances actually taken amount to $790, and to that extent the validity of the note is not denied. But the concession that the note is so far valid, it seems to me, virtually admits that it is good for the whole amount. It is not like an ordinary commercial note, where a partial failure of consideration may be set up as between the original parties. I look upon this note as a statutory security, the validity of which may be rested entirely upon the statute authorizing it to be taken, and does not at all depend upon any question of consideration. And in this view the security, if good for any amount, is valid and effectual for the whole. If, however, a consideration should be deemed essential to its validity, then the agreement signed by the plaintiff with others, interested as associates in this company, to give their notes respectively, and to share severally the liabilities. and enjoy the advantages of The Merchants' Mutual Insurance Company, as secured by its charter, and the fact also that dividends of the profits on the excess of the notes so given, over and above the amount of premiums on actual insurance, were also provided for by the charter, and to be annually distributed to the several makers of notes, constitute a consideration valid and sufficient to uphold this note.

It was alleged on the part of the plaintiffs below, on the argument, and the fact was not at all controverted, that the note in question to its full amount with, the notes of other persons given in advance for premiums, was, by the commissioners, included with the premium notes on actual applications, and used to make the amount of $500,000 required by the 2d section of the

act as a prerequisite to the organization and commencement of operations of the company.

It may be questionable, perhaps, whether under the provisions of the charter these notes were thus applicable, and whether they could be made legally available as the basis on which alone the organization of the company was authorized by the legislature But this question was not raised. The objection of the plaintiff in error does not extend to the legality of the company's organization, nor to the collectability of that part of the note amounting to the premium on insurance actually made; but the objection and the only question submitted for our consideration is, whether this note, as to the balance beyond the actual insurance, can be collected. Of that I have no doubt. Admitting what I deem is conceded by the *plaintiff in* error, *that* the company was duly organized, and that the note was taken in the exercise of its legitimate powers, and is valid in part and collectible to the amount of $790, and there remains not a doubt of the validity and collectability of this note to its entire amount, and the application thereof by the company to the purposes authorized by its charter.

It was not the intention of the legislature, nor is it necessary to the validity of these notes to their full amount, that insurance by the company shall, at the time, or subsequently, be actually made to the persons making the notes, to such an amount as that the premium thereon shall in amount be equal to the amount of the notes. That is not at all important or necessary. The object of this note and all similar notes taken by the company, and the purposes for which they were designed by the legislature, are for the better security of the dealers with the company; and if losses have been or shall at any time be sustained by those dealers, these notes to the entire amount thereof are legally as well as equitably applicable to the payment and liquidation of those losses. By the great fire in New-York in 1845, this company incurred liabilities on account of insurances to an extent exceeding altogether its means, and was rendered utterly insolvent; and justice requires, therefore, that all its available means shall be collected and faithfully appropriated to meet the losses of its dealers and creditors. It would be a

palpable perversion of the object and design of the legislature, and a gross fraud upon the dealers and creditors of the company, to hold that these notes and securities, upon the basis of which the community has been induced to deal with the company, are void and uncollectable wholly, or available only to the extent of the actual insurance made thereon.

I am of opinion that the judgment of the superior court should be affirmed.

Judgment affirmed.