BROWN, receiver of the Croton Insurance Co. v. CROOKE and FOWKS.

The Croton Insurance Company was organized under its charter, and commenced business in 1844. In 1846, the defendants and others subscribed an agreement with the company, by which, after reciting that it was expedient to increase the subscription notes to the company, they undertook to give promissory notes for the amount set opposite their respective names, for the protection of persons to be insured, and to encourage others to do their business with the company, *which notes were to be in advance for premiums on policies of insurance, which they agreed to take thereafter*. In pursuance of this agreement, the defendants gave their notes to the amount of $5000. The company continued to issue policies in the ordinary course of its business to a large amount, upon which losses happened and remained unpaid. The defendants however, after the giving of their notes, took out no policies, and they resisted the payment of the notes on the ground that they were without consideration. *Held*, that under the provisions of the charter, the notes were valid, and that the receiver of the company (which had become insolvent,) was entitled to collect the amount thereof to be applied in the liquidation of losses and liabilities.

The principle of the case of *Deraismes* v. *The Merchants' Mutual Insurance Company*, (1 *Comst.* 371,) re-affirmed.

JOHN BROWN, as the receiver of the effects of the Croton Insurance Company, an insolvent corporation, brought assumpsit against the defendants upon a promissory note of $1000, being one of several notes executed by the defendants to the order of that company for premiums in advance on policies thereafter to be taken. It was proved that the notes had no other consideration, and that no premiums had been earned by the company, inasmuch as the defendants had taken no policies after the notes

[52] were given. The plaintiff had a verdict and judgment in the superior court of the city of New-York where the action was brought, and the defendant appealed to this court.

P. S. Crooke, for appellant.

J. N. Taylor, for respondent.

JEWETT, J. The Croton Insurance Company was incorporated by an act of the legislature, passed April 10, 1843. Section 4 conferred on the company all the powers and privileges which were granted to the Atlantic Mutual Insurance Company, by the act to incorporate that company, passed April 11, 1842, with certain exceptions therein mentioned, but which it is not necessary to state.

The case shows that the Croton Insurance Company was organized under the act for its incorporation, and began to transact business as such, in the city of New-York, on the first of July, 1844, and on the 15th day of May, 1846, became insolvent. On the 20th of July, in that year, the plaintiff was appointed receiver of its effects, and filed the security required by law, under the provisions of the statute, entitled " of proceedings in equity against corporations." (2 R. S. 462.)

In 1846, and as I infer from the case previous to the insolvency of the company, the defendants by the name of Crooke & Fowks, and nine other individuals subscribed a paper, writing and set opposite to their names therein respectively $5000, of which agreement the following is a copy : " Whereas, it is desirable and expedient to increase the subscription notes to the Croton Insurance Company of New York; the subscribers, for value received, agree with James G. Stacy, president of said company, and on behalf thereof, to give promissory notes payable in one year from date,' to the order of said Croton Insurance Company, for the amount set opposite their names, respectively, for the protection of persons to be insured by said company, and for encouraging others to do their business with it; which [53] notes are in advance for account of premiums to the extent

of those sums in policies which we agree to take of said company hereafter, at the rates usually charged by them. The said notes being given in accordance with the provisions of and subject to the privileges contained in the charter of said company. New-York, 1846." The subscribers respectively made their notes to the company, pursuant to the subscription. The note on which this suit is brought, is one of four notes, amounting in their aggregate to $5000, made to the company by the defendants pursuant to their subscription. After the making of these notes and up to the period of its insolvency, the company continued to issue policies of insurance in the ordinary course of its business to a large amount, upon which losses happened and which remained unpaid. The defendants, however, had not taken any policies of insurance from the company after the making of said notes; and therefore, it is contended, that the note in question is without consideration and void.

The second section of the act to incorporate the Merchants' Mutual Insurance Company, (*Laws of* 1843, *p.* 73,) constituted certain persons named, commissioners, whose duty or the duty of a majority of them, it was made, within two years after the passing of the act, to open books to receive applications for insurance; and after receiving applications for insurance to be approved by them, amounting to $500,000, the premium on which should have been actually paid in or secured to be paid, the books were authorized to be closed and the company organized. By the 1st section of the act to incorporate the Croton Insurance Company, (*Laws of* 1843, *p.* 66,) certain persons named were appointed trustees, and by § 7 of the act to incorporate the Atlantic Mutual Insurance Company, (*Laws of* 1842, *p.* 261,) the provisions of which were made applicable to the Croton Company, it was made the duty of the eight trustees, first named, in the first section of the act, or the duty of a majority of them, within two years after the passage of the act, to open a book to receive applications for insurances, and after receiving applications for insurance to be approved by them amounting to five hundred thousand dollars, the book was authorized to be closed and the company organized. Section 12,

[54] of the act to incorporate the Merchants' Mutual Insurance Company, is a transcript of § 12, of the act to incorporate the Atlantic Mutual Insurance Company, and applicable to the Croton Company, and is as follows : " The company, for the better security of its dealers, may receive notes for premiums in advance, of persons intending to receive its policies, and may negotiate such notes for the purpose of paying claims or otherwise, in the course of its business ; and on such portions of said notes as may exceed the amount of premiums paid by the respective signers thereof, at the successive periods when the company shall make up its annual statement as hereinafter provided for, and on *new notes* taken in advance thereafter, a compensation to the signers thereof, at a rate to be determined by the trustees, but not to exceed five per cent per annum, may be allowed and paid from time to time."

It is true, that the case under consideration is distinguished from *Deraismes* v. *The Merchants Mutual Ins. Co.* (1 *Comst.* 371,) in respect to some of the facts in the case, but not as I think in respect to the principle upon which that case was decided. The note upon which the suit was brought in that case had been made, in renewal of a previous note made for premiums in advance on policies of insurance, intended to be received by the defendants from the plaintiffs at the opening of the book to receive applications for insurance, and constituting in part the $500,000, necessary to the organization of the company ; a part only of such premiums on insurances had been actually received by the defendants, and that amount had been by them actually paid to the company upon their note. In this case the note was made, as I assume, for the purpose of increasing the subscription notes, before made, to the amount of $500,000 ; for the case shows that the company was organized in July, 1844, which by the terms of the act for the incorporation of the company, could not have taken place unless the application for insurance, approved by the trustees, had amounted to that sum.

In the case referred to, this court held that the note made to the company in pursuance of its charter for premiums in advance, was valid for the whole sum for which it had been given,

notwithstanding the premiums on insurances actually taken, [55] amounted to only a part of the amount of such note. The 12th section of the charter to which I have already referred, in terms " for the better security of its dealers," authorizes the company to receive notes for premiums in advance, of persons intending to receive its policies, and to negotiate them for the purpose of paying claims or otherwise in the course of its business ; and to allow and pay to the makers of such notes, from time to time, a compensation on so much of the amount of such notes, as exceeded the premiums on policies actually taken, at a rate to be determined by the trustees, not exceeding five per cent per annum on that amount.

It is evident that the company was authorized by said section, at any time, as well previous to as after its organization, to increase the amount of such notes ; for the clause in that section, providing for compensation to be paid to the makers of such notes, expressly includes " new notes taken in advance thereafter," referring to notes taken for premiums in advance, after the annual statement should be made by the company as provided for by § 13. These notes became the property and effects of the corporation, with which the plaintiff became vested as receiver, on his appointment. ( *Verplank* v. *The Mercantile Ins. Co.* 2 *Paige,* 438 ; 2 *R. S.* 464, § 41. This case can not be distinguished in principle from the case referred to, and its decision must be governed by the decision made in that. The judgment must be affirmed.

Judgment affirmed.