By the Court,
G-arvih, J.
The defendant seeks to reverse the judgment in this case, for several reasons ; among others, that the note was void, because not authorized by the charter. The 8th section of the charter certainly authorizes the giving of notes for the better security of its dealers, and points out to whom such notes may be given, in addition to the object and design, by those intending to receive its policies, of which this defendant was one. The company was certainly duly organized, and thus became capable of acting as a party to such an arrangement. If, then, the company were a corporation, they had the ordinary power to carry into effect the purposes and objects of their creation, without any qualification — as such company, in order to induce the community to take policies with them, they started with the design of making the corporation strong in funds and credit; thus intending to establish *186 relations of confidence with their dealers, and holding out inducements such as would attract to them a large class of persons whose only object in life assurance is to make provision for those they cannot otherwise provide for; permanency' and ability to pay being the chief reasons for preference of one company over, another. No company can do business without establishing a character for pecuniary ability to respond for losses. This defendant was a trustee of the company, took part in its action, was one of the assured ; was cognizant of its doings and action, received the interest upon his note, had the same allowed upon the premium due upon his policy, and, so far as appears in this case, assumed the liability purporting to be created upon the face of the note and subscription. It is quite clear, if this had been a note absolute upon its face, payable without any conditions, the defendant would have been liable, provided it was given for premiums. This the charter authorizes in terms ; the design being to create a fund out of which any losses should be paid. The 13th section provides, that upon such notes, or securities, persons giving such notes may be allowed not exceeding six per cent in addition to any other profits they may be entitled to' as members of the company ; showing clearly in these two sections, that the legislature contemplated the' making of notes by those named, and intending to receive policies in the company. All this preceded the issuing of any policies, was within the limitation of time fixed in the 8th section, and was preliminary to incurring policied liability. The charter provides that these notes may be negotiated for the purpose of paying claims against the company. The defendants’ note restricts his liability to any deficiency arising upon losses upon policies issued by the plaintiffs after all other funds of said company have been exhausted> The charter provides for negotiating these notes for paying claims against the company, in general terms. The note restricts the payment to losses upon policies after exhausting all other funds of the company. The note, never-. theless, provides for paying claims. Losses upon policies are claims, and are none the less so because they remain after all *187 other funds of the company have been exhausted. In this respect, therefore, it cannot be said that the note was unauthorized by the charter. The defendant cannot complain, so long as his obligation falls within the terms of the charter, and is applied only to the uses and purposes authorized by the enactment. Again, the presumption is, after the publication in the reports of the company to the legislature, and the organization, means and securities of the company in public newspapers, and inviting business, that the assured relied upon these notes as a fund upon which a call might be made in any event, and out of which the beneficiaries of the assured might obtain payment of the amount of the policies. The defendant went into this business with his eyes open, was to receive interest upon his money at the rate of six per cent per annum, in addition to hife share of the profits. This was the motive which prompted his action, and because the company has failed, he cannot now say, “ I have been unsuccessful in my enterprise, and, therefore, repudiate my obligation." This would be fraud upon the beneficiaries of the assured, and work great injustice at the expense of common honesty and good faith. This, we think, is settled by the principles laid down in the case of White v. Haight, (16 N. Y. Rep. 310,) where a section like the 8th section of this company’s charter is referred to at length and commented upon by Judge Denio. This same question, and in substance the same section, was directly up and adjudicated in the case of Deraismes v. The Merchants’ Ins. Co., (1 Gomst. 371,) wherein it was held that a note so given is valid by force of the statute authorizing it to be taken. It cannot be successfully urged that this note was without consideration, it having been given by statutory authority, for the purpose of increasing the capital, and encouraging others to do business' therein. Such a note, given to an insurance company, and for such a purpose, has been declared valid. (Brown v. Crooke, 4 N. Y. Rep. 51.) It is true, this was for the benefit of a third party, but this makes no difference, (Lawrence v. Fox, 20 N. Y. Rep. 268,) and such a note may be enforced by such third party, although not privy to it, and *188 without notice thereof until after- it was made. Again ; if a consideration was necessary, to maintain a statutory note, it is to he found in the concurrence of others in giving similar notes by arrangement with the defendant at the time the subscription was made for the purpose of giving credit to the company, the contemplated advantages of insurance to such a company, and receiving interest upon the notes at a certain rate, in addition to any other profits he might be entitled to as a member of the company. (1 N. Y. Rep. 371.)
We must, therefore, hold that this note was authorized by the charter, and given upon a sufficient consideration, and therefore valid in the hands of the plaintiffs, who were authorized to receive and hold it for the uses and purposes expressed in the charter, and was a legitimate use of the power conferred upon the company by the charter. t
Again ; it is contended on the part of the defendant, that by the terms of the note, it was to be returned to the defendant and cease to be an indemnity, whenever the company should have acquired a surplus of capital out of the profits of the business to the amount of $25,000 ; and it is contended that it is shown to have done so on the 1st May, 1850, and thus the defendant was exonerated from liability upon the note in question. Was he so exonerated ? The company reported, on the first of May, 1850, in their statement of the condition of the company to the legislature, their net proceeds at $25,479.29. This consisted of cash on hand $5813.84, premium notes $14,149.41, and dues from agents $5,515.89 ; and in the same report give losses notified, part of which are awaiting proofs $11,000 ; less amount not recognized $6500, leaving $4500 of losses to be paid. It is not pretended that this shows the company at this period free from all obligations against them, with a surplus capital made out of the profits of their business. Unearned-premiums cannot be said to be profits. .If there had been $25,000 of money in the treasury, with no losses upon policies to be paid, or other expenses to be taken'from the fund, it might have been then a question for consideration, but for aught that appears in this case, the *189 company might at the time this report was made, have been liable to pay the whole $11,000 of losses ; and until that question was settled they could not properly say, and we cannot hold for the purpose of exonerating the defendant from his obligation, that the company at any time before its insolvency, had acquired a surplus of $25,000 out of the profits of their business, but the deductions of the $4500 from the net proceeds puts the amount below what would be necessary to exonerate the defendant under the provision in the subscription, and this last amount seems to be conceded. We, therefore, think this view of the case cannot be sustained.
It is further urged that the defendant is not liable on his note, until all other funds of the company have been exhausted.
This is one of the provisions of the subscription. It is in proof, and not disputed, that the company is insolvent; that its property and effects had passed into the hands of a receiver ; that all the visible property of the company had been sold on execution. It also appeared that the company then had no other means, except the premium notes, and guaranty notes, and the proofs show that the premium notes were worthless and not available; consisting of small sums, from $3 to $50, the makers of which were scattered through six different states ; from their location, and difficulty of collecting at such distances of such small amounts, nothing could be realized from them. As to the securities furnished by Caznau & Edwards, it is quite clear the arrangement was imperfect and not consummated, the securities not being satisfactory to the trustees, and ultimately went back into their hands without ever having been held by the company, as their property. There was an abundance of uncontradicted evidence, to establish that all other funds of the company had been exhausted, except the guaranty notes. The evidence in the case, so far as any question of fact was concerned, was uncontradicted, and there was no question of fact for the jury. The objections and exceptions taken by the defendant should be overruled, and the order and judgment herein affirmed, with costs.