VERPLANCK and others *vs.* THE MERCANTILE INSURANCE COMPANY OF NEW-YORK and J. BARKER.

No persons are parties as defendants in a bill in chancery, except those against whom process is prayed, or who are specifically named and described as defendants in the bill.

Where there was no prayer of process against a corporation by its corporate name, but only against the officers thereof, and the corporation was not described in the bill as being a party thereto, *held,* that the corporation was not before the court as a party to the suit.

A receiver cannot be appointed to deprive the defendant of the possession of his property, ex parte, without giving him an opportunity to be heard in relation to his rights, except in very special cases, as where he is out of the jurisdiction of the court.

In cases where it is proper to appoint a receiver ex parte, the particular circumstances which render such a summary proceeding necessary, should be distinctly stated in the bill or petition on which the application is founded.

The receiver of a monied corporation, appointed under the 41st section of the title of the revised statutes which directs the manner of proceeding against corporations in law and equity, unless his powers are restricted by the order appointing him, is absolutely vested with all the property and effects of the corporation; and he may dispose thereof, and distribute the proceeds among the stockholders.

But a receiver, appointed under the provisions of the 36th section, is a mere common law receiver, to protect the fund during litigation, and he has no powers except such as are conferred by the order appointing him.

June 21st. THE bill in this cause was filed before the late vice chancellor of the first circuit. The complainants were stockholders of the Mercantile Insurance *Company* of New-York. By their bill they alleged, among other things, that the directors of the company were under the influence and control of Jacob Barker, who was largely indebted to the company, and who represented himself to be insolvent. The bill also set forth various acts of the company, and of Jacob Bar-

1831.

Verplanck
v.
Mercantile Ins
Co. of N. Y.

ker, which were alleged to be violations of the charter of the company, or to be injurious to the interests of the stockholders. Upon presenting the bill to the vice chancellor, and without any notice to the defendants or to the officers of the company, he granted an injunction, restraining the president, directors and other officers of the corporation, and the defendant Barker, from exercising any of the privileges or franchises granted by the charter, and from receiving or paying the debts of the company, or from interfering in any way with its property and effects. The vice chancellor, at the same time, made another order, appointing T. R. Smith receiver of the property and effects of the company ; and directing the officers of the corporation immediately to assign and deliver over such property and effects, and all their books and papers, to the receiver. From these two orders the defendants appealed to the chancellor.

*D. Selden,* for appellants. It is not the province of this court to dissolve a corporation for every trifling violation of its charter. This was not its practice under its common law powers ; and the statute law has made no change in this respect ; (2 R. S. 463, 4, sect. 40.) The writ of injunction is issued only to an extent commensurate with the existing or apprehended injury, and which is necessary to protect the party applying for it ; as, if a corporation should violate the section of its charter which prohibits the taking of usurious interest, the court would not prohibit the corporation from exercising all its powers, but would only restrain it from taking usury ; thus applying a remedy adapted to the injury. But if the corporation should become insolvent, then the court would dissolve it ; as a dissolution would then be the appropriate remedy for the protection of its creditors and stockholders. But in this case there is no allegation either in the complainant's bill or in their affidavits that the Mercantile Insurance Company is either insolvent or in debt. Is this then a case which calls for the interposition of the extraordinary powers of the court ? An injunction restraining a corporation from exercising its franchises should never be granted, unless in cases of insolvency, or where there is evidence that the directors intend to waste the corporate fund. The statute did

1831.

Verplanck
v.
Mercantile Ins
Co. of N. Y.

not contemplate that the court would go beyond this. The bill is also defective in not describing the corporate name with accuracy. This is indispensable in bills against corporations. If the least mistake is made in the description it is fatal. But the corporation is not a party to this suit, it not being named as defendant in the bill, and as process is not prayed against it. Where the complaint is that the directors of a corporation or trustees, mismanage or waste the corporate or trust funds, the corporation or trust will not therefore be disturbed, but only the directors and the trustees will be suspended or removed. But in this case if the bill contained proper allegations against the directors, it would not avail the complainants, as the prayer of process is not against them by their individual names. A receiver is never appointed except in cases where property belonging to others either is wasted, or there is danger that it will be. In this bill there are no allegations to lay the foundation for the appointment of a receiver ; the affidavits read on the part of the complainants cannot go beyond the case made by the bill. The affidavit of F. S. Allen must be rejected, as it was sworn to before the complainants solicitor.

The court can in no case issue an injunction against a corporation, unless it is satisfied that its charter has been violated, or that the corporation is insolvent. (*The Attorney General* v. *The Bank of Chenango*, 1 Hopk. Ch. R. 898.) The belief of a party merely as to insolvency is not sufficient ; he must state circumstances upon which his belief is founded.

The ground of the decision in the case of *The Attorney General* v. *The Bank of Columbia*, (1 Paige's Ch. R. 515,) was, that notice had been given of the application to the bank, and the bank not denying the allegations of the attorney general, they were deemed as admitted. (*The Bank of Columbia* v. *The Attorney General*, 3 Wend. R. 892, per Sutherland, J.) There was no proof in this case to authorize either the issuing of an injunction or the appointment of a receiver. There is a distinction between the cases calling for an injunction and the appointment of a receiver. When the fund is not in danger a receiver is never appointed.

*G. C. Bronson*, (attorney general,) for the respondents. The Mercantile Insurance Company had violated several provisions of its charter, and of other acts binding on the corporation and the injunction was therefore properly granted. The authority to grant the injunction is given by the 39th section of 2 R. S. 463. The bill alleges that the company has exercised banking powers in discounting notes, &c. and has sold and purchased goods, both of which acts are violations of its charter. It was not necessary, under the 40th section of 2 R. S. 464, to set out the particular instruments and the times and places in reference to these violations. It was sufficient to aver the facts without detailing the evidence of the facts. The 40th section of 2 R. S. 464, merely provides that due proof be made of the facts required in the 39th section to authorize the issuing of an injunction; and in the bill it is sufficient to aver that the acts prohibited in the 39th section have been committed. The Mercantile Insurance Company is also prohibited by its charter, except for the purpose of vesting its capital or funds, from buying and selling stock or any funded debt, or from dealing in the business of a stock or exchange broker. This provision has also been violated. The legislature having prescribed in what manner the corporation may vest its capital and funds, the corporation is not at liberty to depart from the mode prescribed. The corporation has also violated the 2d section of the 4th title of the 18th chapter of the 1st part of the revised statutes, ( 1 R. S. 601,) by buying in a part of its stock, which operates as a reduction of its capital. This section provides that it shall not be lawful for the directors of any incorporated company to divide, withdraw, or in any way to pay to the stockholders, or to any of them, any part of the capital stock of such company, or to reduce the said capital stock, without the consent of the legislature. A corporation cannot take a transfer of its stock, and keep it alive a such. The capital stock is the funds of the company. If the company has paid out such funds in the purchase of its stock, this extinguishes the stock, and amounts to a reduction of the capital. Where there is only a trifling violation of a charter, and neither the

1831.

Verplanck
v.
MercantileIns
Co .of N. Y.

public nor individuals are injured by it, the court probably would not interfere to dissolve the corporation; but if any injury resulted from such violation, the court will assume jurisdiction of the case.

No person who has any real interest in this corporation, desires its continuance. The whole of Barker's stock is hypothecated at its par value to the company. If the company should be dissolved, Barker would have no interest in the corporate funds. The stock of the company cannot be worth par, as many large debts which are due it are desperate. Can it be for the interest of those whose stock is not hypothecated, to continue the company, since all the stock of those persons who have the control is hypothecated to the company for more than its value? The stockholders who are interested, in fact wish a dissolution of the company. The misnomer of the corporation can only be objected to by a plea in abatement. The granting of the injunction, and the appointment of a receiver in this case, was a proper exercise of the discretion vested in the vice chancellor.

S. Sherwood, same side. The bill seeks for relief under the statute, as well as at the common law. A receiver is appointed wherever there is some existing evil. (Middleton v. Dodwell, 13 Ves. R. 266. Lloyd v. Passingham, 16 id. 59. Duckworth v. Trafford, 18 id. 283. Scott v. Becher and others, 4 Price's Exch. R. 346. Vann v. Barnett, 2 Brown's Ch. Cas. 157. Berney v. Sewall, 1 Jac. & Walk. Ch. R. 627. Hovendon's Sup. to Ves. 500, n. 3.) From these authorities it appears that the court appoints a receiver whenever the fund is in danger, upon affidavit before answer, and without notice to the opposite party. If the court then does interfere, without giving notice to the adverse party, the only question remaining is, is the case sufficiently made out to authorize the appointment of a receiver, without notice to the persons having possession of the property. The case shows that the business of several companies has been transacted together, and all under the direction of J. Barker; that the whole is mixed up and in confusion; that J. Barker is insol-

vent and largely in debt to this company; and strong reasons are shown for supposing that this company is on the way to ruin. In the city of New-York receivers have generally been appointed without notice. (*Boyd*, v. *Murray*, 3 John. Ch. R. 48.) The Mercantile Insurance Company is not authorized to buy and sell goods, &c. or to engage in the trade or business of an exchange or stock broker, or in the purchase or sale of any stock or funded debt, &c. (Laws of N. Y. of 1818, p. 92, sec. 10.) Dealing in stocks is hazardous. The court will not be inclined to extend the powers of the company in this respect. The company has no authority to purchase or hold local bank and insurance stock. We show a strong case of misapplication of funds, besides several violations of the charter.

*B. F. Butler*, in reply. The court of chancery, before the statute of 1825, (Laws of N. Y. sess. 48, p. 448,) has no power to dissolve a corporation. So far as the bill is filed against the corporation, the case must be brought within the provisions of the statute, there being no remedy at common law. (2 Kent's Com. 244, 252.) The court, by virtue of its general jurisdiction, may interfere against directors as trustees to protect the stockholders, and might, with this view, appoint a receiver; but then, to authorize it to do this, the bill must be filed against the directors by name. (*Ogden* v. *Kip*, 6 John. Ch. R. 180.) This bill is defective in not stating correctly the style and name of the corporation. This was necessary. (*Bank of Utica* v. *Smally*, 2 Cowen's R. 770.) The affidavit taken before the complainants' solicitor cannot be read. (In the matter of Hogan, 3 Atk. R. 813.) The name of the solicitor and commissioner being the same, the presumption is that it is the same person; and the *onus probandi* that they are not the same is on the other side. There is principle involved in this objection, as the legislature have prohibited a person from acting as solicitor or counsel and as master in the same suit. The charter of the Mercantile Insurance Company is a peculiar one. It contains two uncommon provisions; the one fixing the number of directors

at 21, and the other requiring each director to hold 30 shares of stock.

Such an extraordinary exercise of power as that in this case, against directors having such an extent of interest, is at least of very uncommon occurrence. The names of the directors are not given in the bill. There is no charge of insolvency against them. And yet an injunction has been granted and a receiver appointed, without notice to the company or the directors, upon the alleged ground that it would have been unsafe to have given such notice. Although the order was for an injunction against the directors, yet, if it affects the corporation, the latter can appeal, and upon the appeal, may show that the order was erroneous. The order is erroneous, as there is no prayer in the bill for an injunction against the directors. The order was improper also, as the court had no power, either under the statute or at common law, to grant an injunction against the directors, if there was no prayer in the bill for this writ against the corporation. And to authorize a prayer for the issuing of an injunction against the directors, they must be named in the bill. If a receiver is prayed for in the bill, it is of the property and effects of the company; and the order for a receiver, as against the company, is erroneous, as the company is not a party to the suit, it not being named as such in the bill, and no subpœna being prayed for against it, which are the tests which determine who are the parties to the suit. If damages should be awarded in consequence of this order, they would be awarded to the directors and not to the company. The corporation is not called upon in the bill to answer, nor is there a charge of combination against it. The bill requires the defendants to answer upon their corporal oaths. This is not the usual prayer against corporations. The prayer is that they answer under their common seal. There was evidently no intention on the part of the complainants that the corporation should answer. The objection here is not one of misomer merely, but also that the complainants, having the true name of the corporation before them, pray a subpœna only against the directors. Accuracy in giving the name of a corporation is important, as there are many names of corporations almost identical.

As the complainants ask for the interposition of the highest powers of the court, a knowledge of the extent of their interest in the corporation is necessary to a proper exercise of the discretion vested in the court in such cases. Whether the complainants own 9000 shares, or only one share, would make a material difference in the exercise of this descretion; but as the bill is silent on the subject of the amount of stock held by the complainants, we have the right to contend that they hold only one share, as the presumption is that they framed their bill as favorably to themselves as their case would admit. The complainants do not charge in their bill that the company is insolvent; nor even that they believe J. Barker is insolvent. All the allegations in the bill are founded upon information and belief. The complainants are not in a situation to acquire the best information; the reside in different counties, and two of them are females. Not one of the large stockholders in the city of New-York has united as complainant. These circumstances should have been considered by the vice chancellor, and should have prevailed with him not to grant an injunction, or appoint a receiver without notice to the adverse party. Here was clearly not a sound exercise of the discretion vested in the court. And here was a delay of 20 days, from the time the bill was sworn to, to the time the orders for an injunction and receiver were granted. Why this delay, if the stock and funds of this company were in such imminent danger as is now pretended. If notice had been given to the adverse party, all these considerations would have been pressed upon the vice chancellor.

If it had been intended that the court should interfere by virtue of its general jurisdiction against the directors as trustees, the directors should have been brought before the court by name. The corporation is not a trustee, as the stockholders constitute the corporation; and the absurdity would then exist of the corporation suing itself. The prayer for relief follows, and is in conjunction with the prayer for a receiver. Where there is a prayer for general, and also for particular relief, no relief can be

1831.

Verplanck
v.
Mercantile Ins.
Co. of N. Y.

granted under the prayer for general, unless it is consistent with the prayer for particular relief, as the former is ancillary to the latter. The appointment of a receiver of a corporation is a disfranchisement of its officers, and works a dissolution of the corporation. This was not authorized by the prayer of the bill; it is the prayer which furnishes the test, as to the ground upon which the bill is filed. In the case of *The Attorney General* v. *The Utica Insurance Company,* (2 John. Ch. R. 371,) the attorney general filed an information against the Utica Insurance Company, which prayed for an injunction to prohibit the company from exercising banking powers. The Chancellor decided that he had no power by virtue of his general jurisdiction to grant the injunction. The law so remained until the act of 1825, (sess. 48, Laws of N. Y. p. 448,) was passed; but this act was only intended to reach cases of insolvency in corporations. Under this act the corporate funds must be in danger to authorize the interference of the court; and this, whether the bill be filed by the attorney general, a creditor, or a stock-holder. The evident object of this act was to protect and preserve the corporate funds for the creditors and stock-holders. The object of all laws is to prevent the mischief intended to be remedied, with as little injury to others as the circumstances will admit. Where a receiver is appointed under the 39th section, (2 R. S. 463,) the authority with which he is vested under the third article of the same title amounts to a judgment of forfeiture against the corporation, as perfect and effectual as if given upon an information in the nature of a quo warranto. This result could not have been the intention of the legislature. The attorney general might have filed his bill either under the 31st or 33d sections, (2 R. S. 462, 3;) and a creditor or an officer of the corporation might have filed a bill under the 33d section, which is a new section, and extends the jurisdiction of the court. The 33d section is extremely remedial in its provisions; but in this case the attorney general has not filed his bill under the 31st section: nor was the bill filed under the 33d section; under either of which sections, perfect remedies could have been obtained for the alleged mischief, without working the ruin

of the corporation. But the most severe remedy is resorted to ; one which can only be obtained by a destruction of the corporation. This leads to an inquiry into the motives of the complainants. They say they fear the corporate funds are in danger ; but if they are, why adopt the remedy which goes beyond the evil apprehended ? Under the 39th section the bill might have been filed for the causes there specified. But the bill is so ambiguously and artfully drawn, and so involved, that if you construe the allegations therein of forfeiture, by the rule *reddenda singula et singulis*, it will be found that some one or other of the several corporations and defendants named in the bill could exercise some one or other of the powers, which it is contended are not possessed by the Mercantile Insurance Company. There is no specific charge, *eo nomine*, in the bill against this company of any single violation of its charter. Great certainty and precision are always required in making allegations of this kind against corporations. (*The Attorney General* v. *The Bank of Chenango,* 1 Hopk. 598. *The Attorney General* v. *Bank of Columbia,* 1 Paige's R. 515. *Same held in Court of Errors.*) The complainant must allege and set out the circumstances so as to show the court there has been a violation of the charter ; at least, the bill must distinctly charge that the corporation has violated its charter, and specify particularly wherein, so as fully to apprise the adverse party of the particular violations for which the bill was filed. The proofs in support of the bill must go to the facts and circumstances which constitute the violations. An allegation that the complainant believes the facts and circumstances charged as violations of the charter to be true, is not sufficient ; the court must have, under the 39th section of the statute, due proof of the facts. Upon the trial of an information, proof that the corporation did, on a particular day, violate its charter, would not be sufficient, but the witness must state the particular acts, and the court will judge whether they amount to a violation of the charter or not. It is not sufficient that the witness is satisfied the charter has been violated ; the court must also be satisfied. The other charges of the violation of the charter contained in the bill, and not before adverted to, are not brought home to

the present directors of the Mercantile Insurance Company. The court cannot discreetly exercise the power of appointing a receiver, unless the present officers of the corporation are unfit to manage its affairs. Suppose the present officers are pure and faithful, and the violations of the charter were committed during the management of their predecessors, would the court take the management out of their hands? Certainly they would be more fit and competent to perform the duties of directors than a stranger; and by permitting them to continue as directors, the expense of commissions would be saved. This information was necessary for the court, before it could discreetly exercise its power of appointing a receiver; but the affidavits and proofs do not sustain the allegations in the bill.

The Mercantile Insurance Company can take securities upon the sale of real estate, received in payment of debts, by force of the words, " or other personal property," Laws of 1818, sec. 10, p. 92.) It can hold stock, provided it is for the purpose of investing any part of its capital stock or funds, or of the proceeds of the sale of real estate; but even if it were doubtful whether the company had this power, there is a decisive objection to the interference of the court by injunction, and the appointment of a receiver; as the affidavits do not prove that the complainants have engaged in the business of exchange or stock brokers. A broker is one who stands between the buyer and seller. If he owns the stock which he buys and sells, he is not a broker. Here, the company purchased stock for itself, and not for others. The influence of such a proceeding upon the prosperity of the company is a different question from that of forfeiture. There is no prohibition against this company's buying in its own stock, and thereby reducing its capital. The act of 1825 is the first statute which contains this prohibition; but it is questionable whether this law applies to previous corporations. The fact of the Mercantile Insurance Company's buying in its own stock is however immaterial in this case, as it is not made a cause of forfeiture in the bill. There was in fact no reduction of capital; and as creditors have not been injured, there can be no ground of complainant; and if there

are still funds sufficient to satisfy the creditors of the corporation, there is no ground for the interference of the court.

THE CHANCELLOR. I shall not attempt to examine or express any opinion upon the merits of this case as stated in the complainant's bill; because upon examination of the objections which have been raised as to the form and regularity of the proceedings before the vice chancellor, I find those objections insurmountable.

The first objection is, that although the order appointing a receiver purports to have been entered in a suit against "The Mercantile Insurance Company of New-York," under which order the appellants have been deprived of the possession of their property, they were not in fact parties defendant in the bill; as the prayer of process was only against the officers of the corporation. The name of the corporation is as before stated. But the prayer for process is that the subpœna may be directed to the *president and directors* of the said company. This was undoubtedly owing to the mistake of the solicitor who drew the bill; and who probably did not intend to make the president or directors, but only the corporation and Jacob Barker, parties to the suit. The same mistake exists as to the prayer for the injunction, and is also carried into the order granting the injunction; so that the injunction, in fact, is neither against the corporation nor its officers by their proper names. As this objection is merely formal, I should not feel disposed to sustain it, if the difficulty can be obviated by an amendment. As it now stands, it may deprive the appellants of a substantial right; and it is somewhat doubtful whether they have the power to answer this bill. It neither prays process against the corporation, nor calls upon them to answer; for, by another singular oversight of the solicitor, that part of the bill merely prays that the confederates may answer upon their corporal oaths; whereas the officers of the corporation, and not the company, are charged with confederating; and they only could put in their answer on their oaths. It is well settled that no persons are parties as defendants in a bill in chancery, except those against whom process is prayed, or who are spe-

cifically named and described as defendants in the bill. ( 1 Marsh. Kent. R. 594. 2 John. Ch. R. 245. 2 Dicken's R. 707.) In Elmendorf v. Delancy, (1 Hopk. R. 555,) Chancellor Sandford says: "When it is uncertain who are complainants, or who are the persons called to answer, the suit is fundamentally defective; and if the parties are not clearly designated, it is the fault of him who institutes the suit." In answer to this objection, it is suggested by the respondents' counsel that it is a mere misnomer of the corporation, and can only be taken advantage of by plea in abatement. It cannot, however, in this case be considered a misnomer. The name of the corporation and the substance of the charter are distinctly stated in the commencement of the bill, and the process is then prayed against the officers only. Besides, the appellants never had an opportunity to make the objection by plea in abatement, or in any other form. As the true name of the corporation was stated, the objection appeared on the face of the bill, and no plea was necessary to bring the fact to the notice of the court.

Another fatal objection to the regularity of these proceedings is, that the appellants were deprived of the possession of their property, and divested of all their corporate rights, without having an opportunity of being heard, and without any sufficient cause for such a summary proceeding. By the settled practice of the court in ordinary suits, a receiver cannot be appointed, ex parte, before the defendant has had an opportunity to be heard in relation to his rights, except in those cases where he is out of the jurisdiction of the court or cannot be found; or where, for some other reason, it becomes absolutely necessary for the court to interfere, before there is time to give notice to the opposite party, to prevent the destruction or loss of property. Formerly it was never done until after answer. (Vann v. Barnett, 2 Bro. Ch. Cas. 157. Maguire v. Allen, 1 Ball & Beat. 75. Tanfield v. Irvine, 2 Russ. R. 149. Coward v. Chadwick, id. 150, note. People v. Norton, 1 Paige, 17.) In every case where the court is asked to deprive the defendant of the possession of his property without a hearing, or an opportunity to oppose the application, the particular facts and circumstances which render

such a summary proceeding proper, should be set forth in the bill or petition on which such application is founded. Oglevie's affidavit in this case, that he was satisfied of the necessity of such a proceeding, was not sufficient. He should have stated the facts on which his opinion was founded, to enable the court to judge of its correctness. There are 21 directors of this company, each of whom, by the provisions of the charter, must be a resident of this state, and an owner of $2,500 of the stock. It is not alleged that a majority, or even any considerable number of these directors were insolvent or destitute of character. And it would be felony in any of the individual officers to embezzle or spirit away the property of the institution, without the consent of the board of directors. (2 R. S. 678, § 59.) The court ought therefore to have something more than the mere opinion of a witness, however respectable, to induce it to suppose such a direction would subject themselves to punishment for the violation of an order of the court, or that the officers of the company would be guilty of felony, by embezzling the property without the consent of the directors, if the usual course of an order to show cause at a short day had been taken, and a temporary injunction in the mean time granted. That practice was adopted by the chancellor in the case of *The Franklin Bank*, (1 Paige's R. 85,) and the same course has been pursued by him in all subsequent cases. This should have been considered by the vice chancellor as the correct practice, unless special circumstances rendered a different course of proceeding proper.

There is another reason which rendered the ex parte proceeding in this case still more objectionable. This is a bill filed by stockholders to wind up the concerns of the corporation, on the ground of an alleged violation of the charter. In this respect it differs materially from the bills which have frequently been exhibited in this court by stockholders, against the individual directors of the company, to restrain them from violating their trust. And it can therefore only be sustained as a statutory proceeding under the 39th section of that title of the revised statutes which directs the manner of proceeding against corporations at law and in equity. (2 R. S. 463.) That

is the only provision I have been able to find which authorizes a proceeding by a *stockholder* to enforce forfeiture of the franchises of the corporation, and to compel a distribution of the funds. Although the 41st section authorizes the court in any stage of the proceedings, upon an application under that provision of the statute, to appoint a receiver of the property and effects of the corporation, it could not have been supposed by the legislature that the court would appoint such receiver, with the powers conferred upon him by the next section, without any notice of the application to the corporation or its officers. The receiver, appointed under that part of the revised statutes, unless his powers are restricted and controlled by the order of the court, is absolutely vested with all the property and effects of the corporation ; and he has full power to sell and dispose of the whole, at his discretion, and to distribute the proceeds among the stockholders, after paying the debts owing by the company. It is in effect a final order in the cause ; and unless altered or revoked, operates as a virtual dissolution of the corporation. It is not a common law receivership to protect the fund pending the litigation ; but the receiver is a statutory assignee, vested with nearly all the powers and authority of the assignee of an insolvent debtor. (2 R. S. 464, § 42 ; 469, § 67, &c.) It would therefore be a violation of one of the fundamental principles of justice, to appoint such a receiver, without any restriction of his powers, on an ex parte application ; and thus to condemn and deprive a company of its chartered privileges unheard. A different kind of receivership is authorized by the 36th section of the same title, on the application of a judgment creditor. (2 R. S. 463.) That is the same kind of receiver which was authorized by the 17th section of the act of 1825, on the application of the attorney general, or of any creditor of the corporation. (Laws of 1825, p. 453.) Those were strictly common law receivers ; such as are usually appointed by this court in suits between party and party, and to protect the fund during the litigation. They have no powers except such as are conferred upon them by the order for their appointment, and the course and practice of the court.

The vice chancellor erred in granting a general injunction on this bill, and in appointing a receiver, without notice to the corporation; both orders must therefore be reversed and vacated, with costs on the appeal therefrom, to be paid by the respondents, to the solicitor of the appellants. The proceedings must be remitted back to the vice chancellor of the first circuit, with permission to the complainants to apply to him for leave to amend their bill, so as to make the corporation defendants therein, and otherwise as they may be advised, upon due notice of such application to the solicitiors of the appellants and of Jacob Barker. Upon such amendment being allowed and made, an order may be entered, directing the defendants to show cause before the vice chancellor, at such time and upon such notice as he shall direct, why a general or other injunction should not be granted, and a receiver be appointed, either with the general powers conferred by the statute, or subject to such restrictions as to the vice chancellor shall seem proper; and that in the mean time a temporary injunction issue, restraining the defendants and the officers of the company from buying or selling any stocks, or doing any act in violation of the charter of the company, and from doing such other acts as may, in the opinion of the vice chancellor, be proper to restrain them from doing, pending the application before him.

Thomas R. Smith, the receiver appointed in this cause by the vice chancellor, must also forthwith deliver over to the assistant register of this court, as clerk of the vice chancellor of the first circuit, all the books and vouchers, monies, property and effects of the corporation, which have come to his hands, or to the hands of any of his attornies, servants or agents; and the assistant register must deposit the same in the bank of the Manhattan company, subject to the further order and direction of the vice chancellor. And they are to be delivered up to the officers of the corporation, unless the complainants shall procure their bill to be amended, and obtain an order to show cause, &c. within three weeks after notice of this decision. Or, if the directors of the corporation, or the major part of them, shall give sufficient security, to the satisfaction of the vice chancellor, to abide the final order

and decree which may be made in this cause, and to account for the property and effects of the company as this court shall direct, the books, property and effects, the monies of the corporation in the hands of the receiver, are to be immediately restored to such directors, or to their agents or servants, for the use of the company.