## SUPREME COURT.

CHARLES BLIVEN agt. PERU STEEL AND IRON COMPANY.

*Corporation receivership —A stockholder's right to wind up the business of a corporation, or have a receiver appointed.*

A stockholder has no right by the inherent powers of a court o: equity to bring suit to wind up the business of a corporation.

If a stockholder may proceed under 2 Revised Statutes, 463, section 38, which provides for dissolution when the corporation has been isolvent for a year, or has neglected or refused for a year the paymnt of its debts, or has suspended its business for a year, the plaintiff has not made out such a case. It is only a *judgment* creditor rho can apply for sequestration under 2 Revised Statutes, 463, sectioı 36. A creditor whose claim has not been prosecuted to judgment cnnot so proceed.

A consent or acquiescence by the trustees of a corporation to a jdgment not authorized by the statute, cannot be substituted for the mdhods so prescribed.

*New York Chambers, January*, 1881.

THIS is a motion to vacate a final decree in the above entitled action.

After the entry of the final decree, Charles Blivn, the plaintiff, died. The petitioners pray that his persona representatives be brought in as parties plaintiff, or the aıion be revived if necessary.

The defendant is a manufacturing corporation, organized under the act of 1848 of this state.

About January 17, 1879, Charles Bliven, the plaintiff, then being the president of said corporation, commenced this action on behalf, as recited in the complaint, of himself and all other stockholders, trustees or officers of the defendant. He alleged that the corporation was indebted to him in the sum of $6,950; that he had duly demanded payment of his claim, &c.; and charging that the corporation had stopped payment, was insolvent and unable to pay its pecuniary liabilities as they become due, and that its property would be lost, materially injured or destroyed; and praying,

I. An injunction restraining the corporation from exercising any of its corporate rights, franchises and functions, and transferring any of its property, &c., &c.

II. A receiver to take charge of the property and business of the defendant, and to perform all the duties of receivers in equity.

III. General relief.

The claim of the plaintiff was unsecured, not reduced to payment, and, so far as appears, not represented by any evidences of debt. The plaintiff had no lien upon the defendant's property.

It appears that the corporation is now solvent, and all unsecured claims (including plaintiff's) have been fully paid.

Final decree was entered May 27, 1879, by default.

No proof was given as to the truth of the allegations set forth in the complaint.

By the final decree it was adjudged:

I. "That the prayer of the complaint be granted."

II. "That the defendant is insolvent, and that its affairs and business should be wound up."

III. "That the defendant, its officers, &c., be enjoined from exercising any of the rights and franchises of said corporation, and from generally disposing of its property."

IV. "That the appointment of Francis J. Dominick as

receiver in equity of all the property of the defendant be finally confirmed, and is constituted the receiver of said corporation, for the purpose of winding up its affairs," &c., &c.

The decree, therefore, was entered solely upon the ground that the corporation was insolvent.

This motion is based upon the petition of the defendant corporation, and of all its present trustees. The latter were not parties to the suit. They file the said petition both as trustees and as stockholders.

They ask, among other things, for the following relief:

I. That the decree in the above action be vacated and set aside.

II. That the action be then revived.

III. That the permanent receiver be reinstated as temporary receiver.

IV. That the petitioners be then allowed to come in and defend the said action; if they should be so advised, etc., and apply for an order discharging the receiver after he shall have accounted, etc.

V. That they have general relief.

*Theodore M. Morgan* and *John Clinton Gray*, for the motion.

*Manley A. Raymond* and *Algernon S. Sullivan*, opposed.

BARRETT, *J.*— It seems to me to be very clear that this application should be granted. Neither a stockholder nor a creditor had a right thus virtually to dissolve the corporation. It is well settled that such a decree is not warranted by the general or inherent powers of a court of equity. The statute is the sole guide in such matters.

The plaintiff Bliven filed his bill as a stockholder, although it is averred that he was a creditor as well. As a stockholder he was not entitled to a decree winding up the affairs of the corporation, and for that purpose appointing a permanent

Bliven agt. Peru Steel and Iron Company.

receiver (*Howe* agt. *Deuel*, 43 *Barb.*, 505; *Ramsey* agt. *The Erie Railway Co.*, 7 *Abb.* [*N. S.*], 181; *Gilman* agt. *The Greenpoint Sugar Co.*, 4 *Lans.*, 483; *Galvey* agt. *U. S. Steam Refining Co.*, 36 *Barb.*, 256; *Denike* agt. *N. Y. and Rosendale Lime and Cement Co.*, *Ct. of Appeals*, see opinion EARL, J.) That wàs said in *Verplanck* agt. *The Mercantile Insurance Company* (2 *Paige*, 438) to be a virtual dissolution of the corporation. So in *Gilman* agt. *The Greenpoint Sugar Company* (*supra*), INGRAHAM, J., referred to *Howe* agt. *Deuel* (*supra*) as holding that in no case could a stockholder, except of a moneyed corporation, have a receiver appointed to take possession of the property of a corporation, "*and thereby* cause a forfeiture of the charter."

If a stockholder may proceed under that branch of the statute (3 *R. S.*, 463, *sec.* 38) which provides for dissolution when the corporation has been insolvent for a year or has neglected or refused for a year the payment of its debts, or has suspended its business for a year, as to which we need express no opinion, still it is, to say the least, exceedingly doubtful whether the plaintiff made out such a case. He says, in his complaint, that a part of the indebtedness has been due for a year; but that is not the averment of insolvency for a year. He also says that his entire debt of $6,950 is now (that is, at the time of filing the bill) due, and that payment of the same has been demanded and refused, upon the ground of a lack of sufficient pecuniary assets. But he does not state when the demand was made, *non constat* it was within the year, perhaps the day before the filing of the bill. As to the suspension of business, the complaint falls far short of what the statute requires. A partial suspension will not do, nor, to quote the substance of the complaint, "a *practical* suspension to *a great extent* for the whole *or greater part* of the year." Even the then present insolvency of the company was only in the sense of inability to pay its debts as they matured.

There was in reality an excess of assets over liabilities, and

the reverse was made out only by the strange process of including the capital in the list of liabilities.

The plaintiff was equally weak as a creditor; for nothing is better settled than this, that it is only a judgment creditor who can apply for sequestration under 2 Revised Statutes, 463, section 36.

It may be said that the company substantially assented to what was done. Even if that were so, the question of authority remains.

The statute points out the means of effecting the voluntary dissolution of a corporation. Consent to a judgment not authorized by the statute cannot very well be substituted for the methods so prescribed. But, in truth, the company did not so consent.

The proofs would seem to indicate acquiescence upon the part of some of the trustees in the appointment of a temporary receiver.

As to the board, however, there is a conflict of evidence. However that may be as to the temporary receivership, it is quite evident that the plaintiff, Bliven, who was president of the company, acted upon his own responsibility in procuring *the final decree.* He had no authority from the board of trustees to proceed to this grave extremity. The present body would be derelict in its duty if it suffered the company to be thus practically wiped out of existence.

There was, in fact, no necessity for this iron-clad decree. What has been done could as well have been accomplished, certainly without any greater straining of the statute, under orders of the court to the temporary receiver.

But even the exigency which undoubtedly prompted the plaintiff's irregular action has ceased; for it now appears that the entire unsecured indebtedness of the company has been paid, with every reasonable prospect, one would think, from the receiver's past success, of the payment at no distant period, of the secured indebtedness. Thus, the danger to be apprehended from judgments at law has passed away, and

the company is free to put its energies, facilitated by the receiver or other suitable agencies, to the work of complete and perfect rehabilitation. The payment of the unsecured indebtedness is admitted, but the present plaintiffs seeks to retain the judgment for their bonds, which is the form of the secured indebtedness. This will not do, for the reason that the complainant was entirely silent as to the bonds, and naturally so, because no part thereof was due when Bliven exhibited such complaint. He cannot now, nor can other bondholders, in a like position, be permitted to uphold this unauthorized and now really *spent* judgment, by a supplement entirely foreign to the grounds upon which it was obtained, especially as the papers disclose the fact that an original bill in due form has been filed, and is now pending on behalf of the bondholders; in which action his and their rights, with respect to the secured indebtedness, will be fully and adequately protected. That bill proceeds upon a different footing from the present. The bondholders have a specified lien, but seemingly no present right to foreclose. Consequently they have a distinct equity to preserve the subject-matter of the lien, and, by the carrying on of the business temporarily through a receiver, to conserve that lien, and in due time render it practically available. So that even if the bondholders had become parties to this suit, which, in a legal sense, they have not, the *non sequitur* of such a supplement to the original bill herein is apparent.

These conclusions cannot be affected by the individual action of one or more of the trustees. We have not, for instance, overlooked what is said as to Mr. Gunther's general assent as to his agreement with Bliven, and in fact as to his course throughout.

But his individual action or non-action could not bind the company, and the essential fact remains that this application proceeds from the company and its board of trustees.

While we have been compelled to criticise the present action, we have no doubt that it was originally well intended,

and indeed that it has served a useful purpose. But the statutes of our state cannot be disregarded, however great or pressing the emergency. Still, the receiver has acted in good faith and he will be protected for whatever he has done under the orders of the court.

We do not now definitively decide that the present action should be dismissed and the receiver directed to account, for such relief is not within the scope of the present application.

But we think upon a review of the whole case, which is more or less involved in this motion, that the plaintiffs would do well to adopt that course, particularly in view of the satisfaction of the unsecured indebtedness and the pendency of the bondholder's suit. If notwithstanding this recommendation they insist upon proceeding, the company will be permitted to answer or demur. If it answers it should have leave to set up the payment of the unsecured indebtedness and any other matters which have happened since the commencement of this suit by way of supplement, as well of course as any proper defense existing at the time of the commencement of this action.

The order will therefore be that the motion papers be amended throughout by striking out the name of Charles Bliven as plaintiff, and inserting instead thereof the names of the executors, who it appears have already been brought in as parties plaintiff in place of said Charles Bliven, deceased.

The order will further provide that the final judgment herein be vacated and set aside, and that the company be permitted within twenty days either to demur or to interpose an original and supplementary answer.

And further, with leave to the defendant to move at any time for the discharge of the receivership and for an accounting by Mr. Dominick and the closing up of his trust, so far as this suit is concerned No costs of this motion. Let the order be settled upon two days' notice.

NOTE.— The foregoing opinion is calculated to remove some misapprehensions which have obtained in reference to the power of a stockholder

Bliven agt. Peru Steel and Iron Company.

or creditor of a private corporation to procure the closing up of its affairs by a receivership. It should be read in connection with the provisions of title 2 of chapter 15 of the Code of Civil Procedure, which modify very much the rules heretofore applicable on this subject. The opinion points out that a stockholder or a creditor cannot, except under the statute, compel the dissolution of the corporation in this manner, even if the corporation do not resist the proceeding or substantially assent to the receivership.

The question whether a stockholder can proceed under the statute (2 R. S., section 38; 3d Id. [6th ed.], 748) on the neglect of the corporation for more than one year to pay its debts, &c.; or for the suspension of its business — a question not decided by the foregoing opinion — was passed upon by judge DANIELS in *Kitteridge* agt. *The Kellogg Bridge Co.* (8 *Abb. N. C.*, 168), where he *held* in the affirmative in respect to corporations organized under the general manufacturing laws, conceding, however, that the contrary rule was established by the act of 1870, which gave the power of thus proceeding to the attorney-general exclusively.

Under the statutes existing previous to the adoption of the Code of Civil Procedure a clear distinction existed, recognized by the courts between an action to terminate the business and existence of the corporation, and an action to rescue it from danger of being terminated by unfaithful officers.

The provisions of the Code of Civil Procedure in effect require that an action for the former purpose must be brought by the attorney-general exclusively, unless he omits for sixty days after due request to do so, in which case the creditor or stockkolder who made the request may, with leave of court, bring the action.

In respect to the second class of actions to overhaul the conduct and transactions of officers and remove them for misconduct, the Code of Civil Procedure allows the action to be brought by the attorney-general or, except when removal or suspension from office is asked, by any creditor or officer; but singularly enough does not recognize the right, which the courts have always recognized, of a stockholder to bring the action if all the officers refuse.

There is a provision, however (*Code of Civil Procedure, sections* 1808, 1986), by which, if under the foregoing rules, an action can only be brought by the attorney-general alone, he may be retained for the purpose by a creditor, stockholder, director or trustee, and in such a case the action will be in the name of *The People,* on the relation of the person retaining him.

Whether these provisions extending the power of the attorney-general are to be in effect an enlargement of the license and immunity of the managers of corporations, or whether they are to be an additional protection for stockholders and creditors, must depend very much on the discretion and fidelity of that officer. Apart from that it would seem doubt-

ful whether justice is promoted by refusing to allow stockholders and creditors to apply to the court to redress any wrong to the corporation which the officers refused to do; and it is a question whether all the advantages without the inconveniences would not be secured by requiring a private plaintiff to make the attorney-general a party, and, if unsuccessful, pay his costs (*See* 1 *Laws* 1880, *p.* 756, *c.* 537).—[REP.