URBAN C. HERNDON, APPELLANT, VS. WILLIAM HURTER AND SHERMAN CONANT, PARTNERS UNDER THE FIRM NAME OF WILLIAM HURTER & CO., APPELLEES.

1. Where the orders of the Chancellor concern the right of a receiver appointed by the court to compensation, and their effect is to allow him no compensation for services rendered under the order of appointment, the receiver being a party in interest, entitled to be heard, has the right to appeal therefrom. L'Engle vs. Florida Central Railroad Company, 14 Fla., 267, cited and approved.

2. Where a first mortgagee after bill filed, decree of foreclosure and payment of the mortgage debt, continues his suit, obtains the appointment of a receiver, and resists the claim of a second mortgagee for the payment of a just debt out of the mortgaged property, thus protracting the litigation and continuing the receivership, he is properly chargeable with the costs of the receivership.

Appeal from the Circuit Court for Duval county.

Appellees moved to dismiss the appeal on the ground that this court has no jurisdiction to entertain the same.

The facts of the case are as follows:

William Hurter & Co. filed their bill against the Michigan Lumber Company to foreclose a mortgage, which, with the notes it was given to secure, they held by transfer from

Paran Moody, the original mortgagee. The mortgage was dated October 6, A. D. 1876, was upon mill property, machinery and tools and some land of the Michigan Lumber Company. The bill was filed on the 18th of May, A. D. 1877. On the 14th of July, 1877, plaintiffs obtained final decree *pro confesso* of foreclosure for the sum of $2,332.29, and for costs of suit to be taxed. The decree directed sale of the land, and in case of sale that the costs of the officers be first paid out of the proceeds of sale ; that an attorney's fee of $150 be paid, and that the balance, so far as necessary, be applied to the mortgage debt. On the 8th of February, A. D. 1878, upon the application of Hurter & Co., W. C. Herndon, the master in chancery in the cause, was directed to take charge of the saw-mill and the machinery and tools thereto belonging, and to keep and preserve the same until the decree was carried out, or until the further order of the court. The petition upon which the court made this order was filed February 8, 1878. Complainant therein alleged abandonment of the property by D. S. Colby, the agent of the Michigan Lumber Company, theft of a portion of the property, and other circumstances showing the necessity for the court to take possession thereof. The complainant admitted in the petition payment of $886.13 by D. S. Colby, agent, and alleged neglect and refusal upon the part of the agent to pay the balance due alleged to be about $1,700, and the costs and expenses. The next order we find in this case is made on the first of July, A. D. 1878. It is " that the sale in this cause be stayed until the further order of this court upon condition that P. B. Canova file a good and sufficient bond in the clerk's office of Baker county in the sum of $600, conditioned to indemnify William Hurter & Co. for all costs and damages which may be done said Hurter & Co., should this order have been improperly asked by said Canova."

These are all of the papers contained in this record entitled in the case of Hurter & Co. vs. The Michigan Lumber Company.

On the 30th of March, 1878, which date it is perceived is before the order of the 1st of July, 1878, in the Hurter & Co. case, staying the sale in that case and subsequent to the order of February 8, 1878, in the Hurter & Co. case, directing W. C. Herndon, the appellant here to take possession of the property, Paul B. Canova filed an original bill against the Michigan Lumber Company, and against D. S. Colby, its President and Secretary, and against William Hurter and Sherman Conant, partners under the name of Hurter & Co., and against W. C. Herndon, the master in possession of the property under the order in the Hurter & Co. case.

The bill was to foreclose a mortgage of the Michigan Lumber Company to Paul B. Canova, dated the 1st day of May, A. D. 1877, to secure the sum of $1,098.85. This mortgage was upon the mill and machinery covered by the prior mortgage of the Michigan Lumber Company to Hurter & Co. In addition to the usual allegations in a foreclosure suit against the mortgagor, and as against Hurter & Co., the plaintiff alleged that Hurter & Co. claimed to have some interest in the mortgaged premises, the precise nature and amount of which was to plaintiff unknown ; that the Michigan Lumber Company had nearly discharged and paid the indebtedness secured by the mortgage which they had held against the Michigan Lumber Company, referring to the affidavits of Paran Moody and Paul B. Canova exhibits to the bill as proof of this fact. Plaintiff alleged further that notwithstanding said indebtedness to Hurter & Co. had been nearly paid, the said Hurter & Co. had proceeded to foreclose their mortgage against the said Michigan Lumber Company, and had obtained a decree for the full amount of their indebtedness, and had caused W. C.

Herndon to advertise the mortgaged premises to be sold for the full sum . of their indebtedness on the first Monday in April, A. D. 1878, which sale was and is restrained by an order of your honorable court. Plaintiff alleges that the President and Secretary of the Michigan Lumber Company, D. S. Colby, has "absconded from the State," and that he knows of no authorized agent of the company in the State; that his security is diminishing, and other allegations, asking that a receiver be appointed to take charge of the property. Plaintiff prays that an account may be taken of the mortgage debt; that the defendants, Hurter & Co., be required to disclose all payments made to them on account of their mortgage debt and sale of the mortgaged premises, the proceeds to be applied, first, to what may be found due William Hurter & Co., next, the costs of suit, including counsel fees of plaintiff, the balance to be paid to plaintiff to the extent of his mortgage debt. Plaintiff prays also for an injunction restraining sale of the mortgaged premises until the further order of the court.

Paran Moody, whose affidavit is an exhibit to the bill, swears that he knows of his own knowledge the fact that D. S. Colby, the President and Secretary of the Michigan Lumber Company, did, prior to the 13th day of October, A. D. 1877, pay to Hurter & Co. the full amount of the decree of H. & Co. against the Michigan Lumber Company of July, 1877, excepting the sum of $500; that he (Moody) learned from Hurter himself and from Colby that Colby came to the said Hurter to pay him the balance of five hundred dollars, but that Colby owed said Hurter & Co. $400 for a bill of goods, which said Colby wished to pay and leave the balance of $500 due on the decree, but that Hurter was not willing to do this; that Hurter at that time said to him (Moody) that $500 was all that was then

due on the final decree of Hurter & Co., and that he (Moody) knew this to be the fact at that time; that Colby wished him (Moody) to see if he could not persuade Hurter & Co. to let the $500 which he had then ready to pay go towards the said account for goods instead of the final payment of the mortgage decree; that he (Moody) did call on the said Hurter & Co. and prevailed upon them to do this; that afterwards, about the first of February, A. D. 1878, the said Colby informed the said Moody that he (Colby) was going to pay up the balance due under the said decree of foreclosure; that he (Colby) had received a check for that purpose, payable to the —— of William Hurter; that the said check was from the east; that the said Colby told him (the said Moody) that he was going to see if Hurter & Co. would permit him to have back the said check, or the amount thereof, so that he could pay off a balance he then owed to Eppinger & Russell, and that he (Moody) afterwards learned from Hurter that he had done so; that Hurter told him that Hurter and Company had got back from Colby the receipts which Hurter & Co. had given to Colby for the payments which had been made upon the decree; that Hurter said that he had offered Colby if he would give back these receipts for payments made on the mortgage Hurter and Company would give him the check that had been received from the east for the purpose of paying the balance of the mortgage, and would give him $500, which the said Colby also required to pay up Eppinger & Russell; that afterwards Colby told him that Hurter had consented to let him have the $500, and that Hurter was going to let him have the said $500 in addition, and that for this $500 in cash and the $500 check, Colby gave up all the receipts which Hurter had personally given to Colby for the payments the said Michigan Lumber Company had made on the said mortgage decree.

On the 20th of May, 1878, plaintiff, Paul B. Canova, amended his bill alleging that a few days after the property described in complainant's bill was advertised for sale he, through J. W. Howell, tendered to William Hurter, of the firm of Hurter & Co., the full amount due them upon their decree against the Michigan Lumber Company, and that he subsequently, in person, made a tender of the full amount claimed as due by William Hurter & Co. to William Hurter, and that William Hurter said he would not accept the money, and would not surrender to him the mortgage or the decree which William Hurter & Co. had against the Michigan Lumber Company; that he demanded at the time of the tender that he (Canova) should be subrogated to all the rights of William Hurter and Company in their decree. Plaintiff alleged further that William Hurter had told him more than once that D. S. Colby had fully liquidated all the indebtedness due said Hurter & Co. upon the mortgage held by Hurter and Company against the Michigan Lumber Company. Plaintiff prays that the said Hurter & Co. " be barred and estopped from receiving any interest or any remuneration whatever as far as the rights and equities of complainant is concerned after said tender was made."

On the 20th day of May, 1879, counsel for complainant and defendants appearing, the court made an order " that the complainant have a decree in accordance with the prayer of his bill; that the expenses attending the appointment of the receiver be taxed against William Hurter and Company," and that the papers be referred to the special master to ascertain and report to the court the amount due complainant. This order contained a recital of a hearing upon the bill of complaint and the evidence submitted in the master's report. The order recited further that it appeared that the Michigan Lumber Company was justly

indebted to the complainant in the sum of $1,098.85, with interest from May 21, 1877 ; that from the answer of the defendants and the master's report it appeared that on the 14th of July, 1877, a final decree for $2,332.29 was entered in the Circuit Court of Baker county in favor of William Hurter and Sherman Conant, partners, as Hurter & Co., and that this was a prior lien to the lien of Paul B. Canova. The court recited further in this order that a receiver was appointed on the application of William Hurter & Co. on the 8th day of July, A. D. 1878, to take charge of the mortgaged premises, and that it appeared to the satisfaction of the court from the master's report in this case that at the time of granting said order appointing the receiver, the indebtedness due the said Hurter & Co. had been fully satisfied, and that there was nothing due William Hurter & Co. at that time from the Michigan Lumber Company, and that said receiver should not have been appointed.

The record discloses that the receiver had been discharged on the 6th of May, 1879, four days previous to this order, and had been directed to turn over all the property in his charge as receiver to B. S. Roberts, and that he did so turn over the property as directed.

On the 24th of May, 1879, the final decree upon the proofs in the case was filed. This decree finds the amount of the debt due Paul B. Canova to be $1,274.78 ; that the indebtedness of the Michigan Lumber Company to William Hurter & Co. had been satisfied, directs the mortgage property to be sold and the proceeds to be applied to the fees, disbursements and commissions on sales, to attorneys fees, and, so far as necessary, to the payment of complainant's debt, with interest thereon.

On the 3d of November, A. D. 1879, the master to whom was referred the matter of the amount to be paid to the receiver, the court having before that time decreed that such

compensation should be paid by William Hurter & Co., at whose instance the appointment was made, after taking testimony allowed the receiver compensation as follows:

For services 445 days from February 11, 1878, to May 6, 1879,
at $1.50 per day........................................... $667
Allowance for one guard for same time at $1 per day........... 445
Amount paid by receiver to *Sun & Press*..................... 9

Total................................................ $1,121

This allowance was approved by the then Chancellor on November 3, 1879, and the Clerk of the Circuit Court, on the 11th of July, 1881, certifies the bill of costs in which the allowance is made to be correct. The Chancellor approving this allowance goes out of office, another Chancellor succeeds, and upon motion made seeking his approval of the allowance the Chancellor on the 29th July, 1881, orders that the item of receiver's costs, amounting to $1,121, be struck out. The receiver on the 24th of October, 1881, files his petition before the Chancellor praying for an order commanding William Hurter & Co. to pay forthwith to the receiver or his attorneys the said sum of $1,121, together with interest thereon from the 10th of November, A. D. 1879, and that upon their failure to do so within ten days from and after the order and notice thereof that the said receiver " have as an officer of the court such other and further order as justice demands in accordance with the usual chancery practice in such cases."

On the 8th of May, 1882, after hearing, the Chancellor ordered " that the prayer of the petition be denied."

It appears from the recitals in the petition that petitioner sued out an execution against William Hurter & Co. on the allowance of costs made by the master and approved by the Chancellor, but before it was certified to be correct by the Clerk, and that such execution on the 18th of June, 1880, (a date it will be noted prior to the order of the suc-

ceeding Chancellor striking out the allowance to the receiver, such last order being dated the 29th July, 1881,) was quashed for irregularity, by the court.

The receiver now appeals from the two orders of the succeeding Chancellor, dated respectively the 29th July, A. D. 1881, and the 24th of October, A. D. 1881.

*Cockrell & Walker* for the motion.

*D. C. Dawkins* and *R. B. Archibald* contra.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an appeal by a receiver from an order made in reference to his compensation, and the motion now made is to dismiss the appeal for want of jurisdiction.

In the case of L'Engle vs. The Florida Central Railroad Company *et al.*, 14 Fla., 266, this court held that a motion to vacate an order appointing a receiver was one in which he was entitled to no hearing, and that from the order made upon such motion he could not appeal. We there remarked : " When his accounts come up for adjustment his relations will be different. He will then be a party in interest and may be heard, and it will be the duty of the court to see that his rights are fully protected." This case was decided in 1873 by this court. In this case we did not say whether an appeal would or would not lie by the receiver under other circumstances. In the case of Hinckley vs. Gilman *et al.*, 4 Otto, 467, decided by the Supreme Court of the United States in October, 1876, it is held that a receiver can appeal from a decree directing him to pay into court a balance found due from him on the settlement of his accounts. We cannot see under our practice and statutes any reason for a different rule in this State. The appeal here, however, is not from

an order concerning the accounts of a receiver or settling balances due by him in the cause. It is an appeal from an order striking out an allowance for costs made by a master to the receiver for compensation under an order of the court. The order of the court under which the allowance was made by the master, found as a matter of fact that no debt was due to the parties at whose instance the receiver was appointed, when he was appointed, and ordered that the costs in the matter of the compensation of the receiver be taxed against them. The effect of the order appealed from is to allow the receiver no compensation. As remarked in the case of L'Engle vs. The Florida Central Railroad Company he is here " a party in interest and may be heard," and it is the duty of the court to see that his rights are fully protected. He is entitled to some compensation, and when the court reverses an antecedent order directing the master to tax his costs against either of the parties, and strikes out the item of compensation allowed him, his rights, independent of any question concerning the future possession of the property, are affected. He is entitled to be heard when the matter of his compensation is in question, and from an order the effect of which is to allow him *nothing*, he has, under the principles announced in the case of Hinckley vs. Gilman, the right to appeal.

The motion to dismiss the appeal is therefore denied. Ten days are given the respondent in which to file a brief upon the merits.

The said motion having been disposed of the case was submitted on its merits.

*D. C. Dawkins* and *R. B. Archibald* for Appellant.

*Cockrell & Walker* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court on the merits.

In the statement of this case we have gone more into detail than usual, because it shows that William Hurter & Co. procured the appointment of this receiver after their mortgage debt was fully discharged and an improper resistance of the recovery of a debt justly due a second mortgagee after all their claims upon the property had been fully satisfied. It would be a strange rule of law that would permit A. upon a satisfied mortgage to have a receiver appointed of the property of B., and upon proof of the non-existence of the alleged mortgage debt would make the property subject to the payment of the costs of receivership rather than the alleged mortgagee bringing the bill. Here when the plaintiffs, Hurter & Co., had this receiver appointed the mortgagor, the Michigan Lumber Company, owed them nothing. The appointment was in their own wrong and improper. They should have entered satisfaction upon their decree when it was fully paid, and should have ceased any proceedings based upon the view that something was due upon the mortgage when nothing was due. Instead of thus acting they, under the pretence of a debt due them by the mortgagor, force the second mortgagee to file an original bill against them, thus prolonging the litigation and creating the necessity for the continued possession of the mortgaged property by their receiver. Under these circumstances William Hurter & Co., rather than the property upon which they had no claim, and as to which the order for a receiver was improperly made at their instance, should pay the costs of the receivership incurred at their instance and as the result of their wrongful acts.

None of the parties appealed from the decree directing

a taxation of the costs of the receivership against Hurter &
Co. No rehearing in the matter of the decree was asked,
and it stood as the law of the case when the motion in
reference to this allowance was made before the Chancellor.
Says the Supreme Court of Iowa in French vs. Gifford, 31
Iowa, 431 : " We think it would be an unjust and inequi-
table rule if, in all cases, the receiver should be entitled to
his compensation upon the fund in his hands without ref-
erence to the legality of his appointment. Under the op-
eration of such a rule innocent persons might be made to
suffer great loss."

In the case of Verplank vs. The Mercantile Insurance
Company, 2 Paige, 438, the order appointing the receiver
was set aside, and the Chancellor ordered the receiver to
turn over all the property without allowing him any com-
missions thereon.

Neither of the mortgagees here seem to have insisted
upon a sale of the mortgaged premises. The receiver was
discharged without payment, with a direction that the
sums allowed him be taxed against the party who illegally
and improperly caused his appointment.

The Chancellor having directed by interlocutory decree
a reference to the master to ascertain the costs of the re-
ceivership, and having properly decreed that Hurter & Co.
were liable therefor, and having approved and allowed the
allowance made by the master, the receiver was entitled to
a decree for that sum against Hurter & Co., and upon such
decree the receiver was entitled, under rule seven of the
rules governing the Circuit Courts in equity, to " a writ of
execution in the form used in the Circuit Court in suits at
common law."

The statute, McC.'s Dig. 291, Sec. 7, (to which our atten-
tion has been called,) giving a bill of costs taxed by the
Clerk and approved by the Judge, the effect of an execu-

tion, relates only to the statutory costs allowed by Chapter 73, Laws of Florida. A simple reference to the original act will make this very evident. We can see no difficulty in the matter of practice here. While these are not statutory costs, they are costs which may be embraced in a decree as readily as statutory costs, and there is no doubt of the power and propriety of the court issuing an execution upon its decree.

Both of the orders appealed from are reversed, and the case will be remanded with directions to enter a decree against William Hurter & Co. for the amount of the allowance made to the receiver, to bear interest from the date of the allowance of the same heretofore made by the Chancellor to the date of payment, (Merritt vs. Jenkins *et ux.*, 17 Fla., 599 ;) and that execution be issued upon the decree as authorized by the rules.